# Richmond

C. L. SHACKELFORD, ET ALS. V. EDNA B. SHACKELFORD, ET ALS.

October 11, 1943.

Record No. 2699.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*F. Lee Ford* and *Channing M. Hall*, for the plaintiffs in error.

*Lett, Murray & Ford*, for the defendants in error.

GREGORY, J., delivered the opinion of the court.

Is a will made by an unmarried man in which he makes a substantial bequest to a woman, not proven to be his intended wife at the time the will is made but whom he later marries, revoked by the marriage, under Code, section 5232 (Michie), or is revocation prevented in such case by virtue of Code, sections 5120 and 5121?

The court below has held that section 5232 is complete and absolute, and unqualifiedly revokes such a will; and that sections 5120 and 5121 have no application whatever and are not to be considered.

The pertinent statutes read as follows:

"Section 5232. *Revocation of wills by marriage.*—Every will made by a man or woman shall be revoked by his or her marriage, except a will made in exercise of a power of appointment, when the estate thereby appointed would not, in default of such appointment, pass to his or her heir, personal representative, or next of kin."

"Section 5120. *Jointure in bar of dower; effect of conveyance or devise.*—If any estate, real or personal, intended to be in lieu of dower, shall be conveyed or devised for the jointure of the wife, to take effect in profit or possession immediately upon the death of her husband and continue during her life at least, such conveyance or devise shall bar her dower of the real estate, or the residue thereof, and

every such provision, by deed or will, shall be taken to be intended in lieu of dower, unless the contrary intention plainly appears in such deed or will, or in some other writing signed by the party making the provision."

Section 5121, in part, is as follows:

"*Election of widow to waive jointure and demand dower.* —But if such conveyance or devise were before the marriage, without the assent in writing or during the infancy of the female, or if it were after marriage, in either case, the widow may, at her election, waive such jointure and demand her dower. Such election shall be made within one year after the death of the husband or within one year after the admission of his will to probate where the provision is by will, * * * ."[1]

The facts are brief and are not in dispute. W. R. Shackelford, a prosperous business man died on November 21, 1940, at the age of 67 years. His first wife died in 1936. On May 1, 1939, he married a second time. This marriage was with Mrs. Edna B. Richmons, who was a beneficiary of a substantive bequest in his will which is involved here. He made his will on May 16, 1938, about a year prior to the marriage. After the marriage, Mr. Shackelford lived with his wife about a year and a half until his death. He was possessed of a substantial estate and made bequests to brothers, sisters, nephews, a business associate of long standing, and to Mrs. Edna B. Richmons. To her, he bequeathed the sum of $10,000. The residuum of the estate, if any remained, was left to the named legatees ratably in accordance with the respective amounts specifically bequeathed them.

He left no surviving children of this or the former marriage. At the time the will was made, Mr. Shackelford was a patient in a hospital. He and Mrs. Richmons at that time became acquainted and she befriended him, and later they were married. During their married life he steadily declined

---

[1] A somewhat similar provision applicable to the curtesy of the husband is found in the Acts of Assembly 1940, page 448; Code, section 5139b.

physically until his death, but he maintained his mental vigor to the end.

At common law, the marriage of a man and the birth of a child subsequent to the making of a will by him had the effect of revoking such will. The rule was borrowed from the civil law, and the reason assigned for the implied revocation was, that the subsequent marriage and the birth of a child effected such a change in the circumstances of the testator that it was presumed that he must have intended to alter the disposition of his property. 28 R. C. L., Wills, section 146.

Section 5232 is an old statute. It was taken from the statute of 1 Victoria, ch. 26, sec. 18, and was carried in the Code of 1849. It has appeared unchanged in every subsequent Code. The annotator of the Code of 1919 states that the conflict of decisions in *Wilcox* v. *Rootes*, 1 Wash. (1 Va.) 140, and *Yerby* v. *Yerby*, 3 Call (7 Va.) 334, and the evils resulting therefrom, led to this statute. All through the many sessions of the General Assembly and the many Code revisions no change has been made in it. Under it many wills have been revoked over the years.

The court has held in *Phaup* v. *Wooldridge*, 14 Gratt. (55 Va.) 332, and *Hale* v. *Hale*, 90 Va. 728, 19 S. E. 739, that the will of an unmarried man, in the first case, and of an unmarried woman, in the second, were, under section 5232, unqualifiedly revoked by their subsequent marriage. The subsequent marriage of the testator *ipso facto* revokes his will. Mr. Harrison in his Wills and Administration, Vol. 1, sec. 117, says "The statutory provision is peremptory and makes no exception."

In West Virginia, a testator made a will in contemplation of marriage and in it provided for the woman he intended marrying. He expressly referred to his future marriage. He then married the woman for whom he had provided in his will. The court held that (under the West Virginia statute (Ch. 77, sec. 6, Barnes 1923), which is identical with our section 5232,) the will was revoked by the marriage, even though the testator expressed the intention that the

will should continue to be in effect after his marriage. *Francis* v. *Marsh*, 54 W. Va. 545, 46 S. E. 573. It is true the jointure statutes were not invoked in that case and it is also true, according to Mr. Harrison,—Vol. 1, sec. 37(2)— that West Virginia has no amendment to its statute on jointure similar to our amendment of 1866, to the effect that every such provision by deed or will shall be taken to be intended to be in lieu of dower unless the contrary intention plainly appear in such deed or will.

The case at bar is a much stronger one for revocation than was the West Virginia case, for here, as later will be made to appear, there was no evidence of any intent on the part of Mr. Shackelford that his will should survive his marriage, as was the case in *Francis* v. *Marsh, supra.*

■ Jointure originally consisted of an estate of freehold in land, created before marriage, to take effect in possession or profit immediately on the death of the husband, in satisfaction of dower, and the intention to bar dower must have appeared in the deed. It was an absolute bar only when made *before* marriage. If it were made after marriage, it only put the wife to her election whether to accept the provision or claim dower. Harrison on Wills and Administration, section 37(1). By the Virginia statute, section 5120, the estate may be personal as well as real. *Land* v. *Shipp*, 98 Va. 284, 36 S. E. 391, 50 L. R. A. 560; 2 Min. Inst. (4 ed.) 177. And if the conveyance or devise were before the marriage, without the assent in writing, or during the infancy, of the female, the widow is put to her election to waive jointure and demand her dower. (Section 5121.) Under section 5276 the survivor may elect to renounce any provision made for him or her in the consort's will, but that section is not involved here.

■ The original conception of jointure was an estate conveyed to the prospective husband and wife, jointly and before the marriage, by another person. The Virginia statute, section 5120, has not changed the rule. It not only does not forbid such a conveyance but it impliedly authorizes and permits either a conveyance or devise to

the prospective wife as her jointure when made by one other than the husband or intended husband. In *McDonald* v. *McDonald*, 169 Va. 752, 194 S. E. 709, the conveyance to the wife was not made by the husband but this court held that it constituted jointure.

In *Higginbotham* v. *Cornwell*, 8 Gratt. (49 Va.) 83, it was held that a provision for the wife, to bar her dower, must not only have been so intended, but that such intent must appear from the conveyance or devise either by express words or clear and necessary implication. To change this rule of construction the amendatory act of 1866 (Acts 1865-66, page 160) was enacted. The language of the amendment, "and every such provision by deed or will, shall be taken to be in lieu of dower, unless the contrary intention plainly appears in such deed or will, or in some other writing," etc., unqualifiedly changed the rule of construction formerly prevailing when *Higginbotham* v. *Cornwell, supra,* was decided. In *Nelson* v. *Kownslar,* 79 Va. 468, it was expressly declared that the policy of the law was reversed by the amendment of 1866, and instead of the expressed intention, or clear and necessary implication, essential to put a widow to her election in respect to dower, every such provision for her was declared to have the effect of being in lieu of dower unless the contrary intention should plainly appear. See also *Bolling* v. *Bolling,* 88 Va. 524, 14 S. E. 67, and monographic note on Dower appended to *Davis* v. *Davis,* 25 Gratt. (66 Va.) 487.

The question of intent was a troublesome one. *Ambler* v. *Norton,* 4 Hen. & M. (14 Va.) 23. The legislature undertook to settle it by the amendment of 1866. *McDonald* v. *McDonald,* 169 Va. 752, 759, 194 S. E. 709. In the latter case Mr. Justice Holt has provided an interesting discussion of the history of jointure. Also see Minor on Real Property, (2d Ed.) sections 299 to 306 inclusive.

The exhaustive and illuminating treatment of jointure by Mr. W. P. Hazelgrove of the Roanoke Bar found in the petition filed in this court in the case of *McDonald* v.

*McDonald, supra,* merits the interest of all who seek to make a thorough study of the subject.

Our later cases since the amendment of section 5120 in 1866, in addition to *McDonald* v. *McDonald, supra,* are *Land* v. *Shipp,* 98 Va. 284, 36 S. E. 391, 50 L. R. A. 560, and *Tusing* v. *Tusing,* 169 Va. 769, 194 S. E. 676.

None of the cases in Virginia, so far as we are advised, involved a provision by will made prior to the marriage by the prospective husband to the woman whom he later married where such provision was to be taken to be intended in lieu of dower. This court, prior to this case, has never been called upon to declare a will containing such a provision revoked under section 5232.

It is perfectly plain that the legislature by enacting section 5120 expressly authorized a husband to make a *devise* to the wife for her jointure to be in lieu of dower, and that, if a *devise* were so made to her, it should be construed to be in lieu of dower unless a contrary intention appear from the will or some other writing signed by the party making the provision. Section 5121 makes it appear that the will in which the provision for jointure is to be made may be made *before* the marriage, for it says: "But if such * * * devise (a will) were before the marriage * * * the widow may * * * waive jointure and demand her dower." If such a *devise* is made in a will; that is, one for the jointure of the wife, it will be construed to be in lieu of the dower which would in the future accrue to her by reason of the marriage. Unless she elects after her husband's death to demand dower, she necessarily accepts the *devise* (provision) in lieu of dower. But the word *devise,* which would create jointure, implies that it must be embraced in an unrevoked will. There can be no unrevoked will of a man made prior to his marriage. Section 5232 expressly provides that "every will made by a man or woman shall be revoked by his or her marriage, except" etc. (The exception is not material here.) Language could not be plainer.

The controlling question to be determined is whether or not the will of Mr. Shackelford created a jointure estate for his future wife within the terms of the Virginia statutes.

The evidence fails to disclose any intent on the part of Mr. Shackelford to marry Mrs. Richmons at the time the will was executed or at any time prior thereto. So far as the record discloses, he made a pure gift to her in his will, without more. It was a mere present. The gift or present to her was not in her capacity of wife or intended wife. Thus we are not called upon to decide, and of course we do not decide, the question of whether jointure could be created in a will of a man made before marriage to his intended wife, with the *express understanding and intention* that it should bar her dower. That is not the case here.

In the construction of statutes, Mr. Lile in his notes on Statutes, at page 23, has this to say:

"The limitations of man's mental forecast, and the infirmities of his language, make it impossible for the most experienced law-maker to anticipate the various incidents, and combinations of incidents, that may arise in even the remotest lines of human activity; or, with nicety and fullness of expression, to provide for them when they shall arise. Hence, the courts have been compelled to resort to rules of interpretation for ascertaining the will of the law-maker, as these have endeavored to express their will in legislative enactments."

It is elementary that the ultimate purpose of all rules of construction is to ascertain the intention of the legislature, which must prevail in all cases. All rules are subservient to that intent. When the intent is clear from the language used, no construction is necessary. In his notes, on page 26, Mr. Lile takes this interesting statement from the Maryland court: "Statutes are sometimes extended to cases not within the letter of them, and cases are sometimes excluded from the operation of statutes, though within the letter, on the principle that what is within the intention of the makers of a statute, is within the statute though not

within the letter; and that what is within the letter of the statute and not within the intention of the makers, is not within the statute—it being an acknowledged rule in construction of statutes, that the intention of the makers ought to be regarded."

A construction of section 5232 which will, in effect, strike down sections 5120 and 5121 must be avoided if possible. And the latter two sections should not be so construed as to constitute an amendment to section 5232. *Kirkpatrick* v. *Board of Sup'rs*, 146 Va. 113, 136 S. E. 186.

Sections 5120 and 5121 do not necessarily contemplate as jointure a devise by an unmarried man to a woman whom he later marries, when, at the time the devise was made, he had no intention of marrying, and no intention to create a jointure estate. Certainly the legislature never intended by the statutes that jointure could be created by a will which would be revoked by marriage and not revived. On the other hand, the legislature must have intended that the devise before marriage would be found in a valid and unrevoked will.

We have previously indicated that a jointure estate for the wife could be created by a devise before the marriage, if the devise were made by one *other* than the prospective husband, for section 5232 only revokes the will of one who later marries. It does not revoke the will of another. Such other person's will is unaffected by section 5232. For emphasis we repeat that the original conception of jointure contemplated that it might be created by devise by some one other than the husband, or intended husband, and when so created it is not prohibited by the present Virginia statute. Section 5120 does not provide that a jointure estate must be created by the husband, or intended husband. It simply provides that any estate intended to be in lieu of dower shall be conveyed or devised for the jointure of the wife. It is perfectly obvious that the estate may be conveyed or devised to the intended wife by any one other than the intended husband.

Again, in the last portion of the statute, it is contemplated that jointure may be created by one not the husband or intended husband, for it reads, "or in some other writing signed *by the party making the provision.*" It does not specify the husband to be the party making the provision. The quoted words include any one who is not the husband or intended husband.

The inescapable conclusion is that a devise made in a will before marriage to the woman who becomes the wife of the man who made the will, without any intention thereby to create a jointure estate, is revoked, under section 5232, by the subsequent marriage. However, a will made before marriage in which a devise is made for the intended wife by one *who is not the contemplated husband* (for instance, the husband's father) would be valid, and would create jointure, if the other essentials were present. It would be unaffected by section 5232. Such a devise is necessarily the one contemplated by section 5121, where a devise before marriage is mentioned. The latter section certainly would not contemplate a devise in a will revoked by section 5232.

There is another statute, equally ancient, taken from 1 Vic., Ch. 26, sec. 22, which has not been called to our attention, but which we think might afford a case in which a devise from the intended husband to his prospective wife, made before the marriage, for her jointure, might be valid. It is Code, section 5234, and it reads as follows: "No will or codicil, or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived otherwise than by the re-execution thereof, or by a codicil executed in manner hereinbefore required, and then only to the extent to which an intention to revive the same is shown."

In the case before us Mr. Shackelford, after his marriage, did not revive his will under section 5234. We might conclude that the portion of section 5121 which refers to a devise before marriage to the woman who later becomes the testator's wife, has reference, in addition to a devise made

by one who is not the intended husband, to a devise in a will made by the intended husband which has been revived under section 5234, and which previously had been revoked under section 5232. In this case there having been no revival of the will by Mr. Shackelford after his marriage, under section 5234 the will remained revoked and of no effect.

If Mr. Shackelford, at any time subsequent to his marriage, had revised his will under section 5234, then in that event the language of section 5121, "But if such * * * devise were *before* the marriage," might have applied, for then there would have been a will made before the marriage containing a devise for the future wife, even though section 5246 provides that the will shall be deemed to have been made at the date of the revival.

In conclusion, a close analysis of the statute (section 5120) makes it plain that there was no jointure created in the will of Mr. Shackelford. The language of the statute, in part, is: "If any estate, real or personal, intended to be in lieu of dower shall be conveyed or devised for the jointure of the wife, to take effect in profit or possession immediately upon the death of her husband, * * * ." The essentials of the statute are that the conveyance or devise must be "intended to be in lieu of dower." It must be "for the jointure of the wife." It must take effect "upon the death of her husband." Every such provision "shall be taken to be intended in lieu of dower."

The word "dower" means a widow's estate in her deceased husband's realty. It depends solely upon marriage and survival. Only a married woman can have dower. "Jointure of the wife" can mean only an estate of a married woman in lieu of dower. "Every such provision" means a conveyance or devise "for the jointure of the wife." And the last portion "every such provision * * * shall be taken to be intended in lieu of dower unless the contrary intention plainly appear in such deed or will or in some other writing signed by the party making the provision" has been held to be a rule of construction and not a rule of property.

*Bolling* v. *Bolling*, 88 Va. 524, 14 S. E. 67. Again, the words "every such provision" means a conveyance or devise for the "jointure of the wife."

Unless there is a "wife" or at least an intended wife, there could be no conveyance or devise in "lieu of dower" and it could not be for the "jointure of the wife," and "every such provision by deed or will" could not apply where there is no wife or intended wife.

The conveyance or devise must be to the woman as a wife, or at least to the wife in expectancy, and it must constitute jointure in lieu of dower. It is not every conveyance or devise to a woman, married or unmarried, without more, that will constitute jointure. The language "every such provision * * * shall be taken to be intended in lieu of dower" can have no operative effect unless and until there is a "wife," or perhaps an intended wife, because the provision is to be in lieu of dower which contemplates a married status or wifehood.

Our conclusion is that the will of Mr. Shackelford did not create jointure, as originally conceived, or under our statutes. In view of our conclusion, the entire argument of the appellant fails, and, under section 5232, the will was revoked for all purposes. It was properly withheld from probate.

The judgment is affirmed.

*Affirmed.*