COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


GREGORY JUDE DeVEAU

                                      MEMORANDUM OPINION[*] BY
v.    Record No. 2481-99-4           JUDGE JAMES W. BENTON, JR.
                                             JULY 25, 2000
MUTSUMI AZEMOTO-DeVEAU


           FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Jane Marum Roush, Judge

          Ted Kavrukov (Kavrukov, Mehrotra & DiJoseph,
          on briefs), for appellant.

          Richard F. MacDowell, Jr. (MacDowell &
          Associates, P.C., on brief), for appellee.


     The trial judge modified a prior visitation order changing

from supervised to unsupervised the visitation of Mutsumi

Azemoto-DeVeau with her children.  In this appeal, Gregory Jude

DeVeau, the children's father and custodian, contends the trial

judge erred because no motion requesting unsupervised visitation

had been filed.  For the reasons that follow, we reverse the

order.

                              I.

     The record establishes that the mother and father were

divorced by decree entered in the circuit court on August 10,

1995.  While the divorce suit was pending, the mother fled the

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

jurisdiction of the court with one of their two children in violation of a court order and was detained while attempting to leave the country with the child. Following an evidentiary hearing, a trial judge entered an order on May 1, 1995, finding "that the evidence is overwhelming that [the mother] abduct[ed] . . . the child [, which] was a premeditated, willful, deliberate taking, despite a court order." The judge granted the father sole custody of the two children, granted the mother supervised visitation with the children, ordered the mother to surrender her passport, and granted other relief. By order of July 28, 1995, nunc pro tunc to June 8, 1995, that same judge continued unchanged the supervised visitation. Various judges have entered other orders since that time, including a ruling that the parties could not file motions in the circuit court without advance permission.

On August 6, 1999, the mother filed in the circuit court a motion to modify visitation. At that time, the visitations were to be determined in accordance with an order dated December 20, 1995, which specified a schedule and procedures for the mother's supervised visitation with the children. In her motion to modify visitation, the mother alleged a series of difficulties with the supervised visitations, including refusal of the supervisor to "do Wednesday evening visitation," the availability of other competent and less expensive supervisors, whom the father would not approve, for Wednesday evening visitation, and various other matters concerning disagreements with the father. As relief, the mother

-

requested that the "Court designate another supervisor to facilitate the Wednesday evening visitation, and to reinforce weekend visitation and to give access to school events and contact with the children's teacher, so the [mother] will be able to [be] involved in the school education of her minor children."

Following a hearing in which the mother and father appeared pro se, the trial judge entered an order suspending the requirement for supervised visitation, requiring strict compliance with the visitation schedule set by the December 20, 1995 order, setting a hearing six months in the future "to review the parties' compliance . . . and to determine whether supervised visitation should be reinstated or discontinued," and granting other relief. The father filed a motion for reconsideration alleging that the mother's motion only "request[ed] to change the agreed upon supervisor," that the father was not given notice "that suspension of supervised visitation would be considered," that "[u]nsupervised visitation was never mentioned at the hearing," and that, consequently, he was denied the opportunity to present evidence that the mother had recently threatened to take the children to Japan. The trial judge denied the motion for reconsideration. This appeal followed.

II.

As a preliminary matter, we address the mother's contention that this appeal rises from a non-final, interlocutory order. This Court has jurisdiction over "[a]ny final judgment, order, or

-

decree of the circuit court involving: . . . custody; . . . [a]ny other domestic relations matter arising under . . . Title 20; . . . [and any] interlocutory . . . order entered in any of the cases listed in this section . . . adjudicating the principles of a cause."  Code § 17.1-405.

In pertinent part the order recites as follows:

ADJUDGED, ORDERED, and DECREED as follows:

1) that Mr. DeVeau shall not take any of his vacation when it conflicts with Ms. Azemoto's visitation;

2) that the requirement for supervised visitation shall be suspended;

3) that Ms. Azemoto shall pay child support on a weekly basis in the amount of $86.53;

4) that the parties shall strictly adhere to the visitation schedule set forth in the Consent Order that Judge Jamborsky entered on December 20, 1995;

5) that the parties shall share responsibility for the transportation of the children to visitation and shall cooperate in transporting the children between Ms. Azemoto's home in Alexandria, Virginia, and Mr. DeVeau's home in Annapolis, Maryland; and

6) that Ms. Azemoto shall not take the children out of a fifty-mile radius of the Washington, D.C. metropolitan area or Annapolis, Maryland area without prior leave of Court.

THIS MATTER IS CONTINUED to Judge Roush's docket on April 7, 2000, for the Court to review the parties' compliance with this Order and to determine whether supervised visitation should be reinstated or discontinued.

-

When an order grants all the relief that was sought and leaves only ministerial execution to insure compliance with the order, it is a final decree. See Feldman v. Rucker, 201 Va. 11, 17, 109 S.E.2d 379, 384 (1959). The recitals of the relief decreed in the above order clearly indicate that the order disposes of the issue raised by the motion, gives all the relief contemplated, and sets a date certain, six months from its entry, to review the parties' compliance. The fact that the trial judge reserves the right to revisit the issue if there is non-compliance does not mean that the order is not final. The order clearly suspended the requirement that visitation be unsupervised upon entry of the order. See Newsome v. Newsome, 18 Va. App. 22, 25-27, 441 S.E.2d 346, 348-49 (1994).

Even if we assume, however, that review six months later to determine compliance makes the order non-final, the order adjudicates the principles of the cause. The principle is well established that to adjudicate the principles of the cause, the order must determine that "the rules or methods by which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply those rules or methods to the facts of the case in order to ascertain the relative rights of the parties, with regard to the subject matter of the suit." Lee v. Lee, 142 Va. 244, 252-53, 128 S.E. 524, 527 (1925). Thus, "[a]n interlocutory order . . . that adjudicates the principles of a cause is one which must

-

'determine the rights of the parties' and 'would of necessity affect the final order in the case.'" Erikson v. Erikson, 19 Va. App. 389, 391, 451 S.E.2d 711, 713 (1994) (citation omitted). It is an order that "respond[s] to the chief object of the suit." Pinkard v. Pinkard, 12 Va. App. 848, 852, 407 S.E.2d 339, 341-42 (1991). Thus, the Supreme Court has held that an order that did not end the cause by striking it from the docket may nonetheless adjudicate the principles of the cause. See Crestar Bank v. Williams, 250 Va. 198, 208, 462 S.E.2d 333, 337 (1995); Snidow v. Snidow, 192 Va. 60, 61, 63 S.E.2d 620, 620 (1951).

The trial judge did nothing more than retain the matter on the docket so that she could more easily review the parties' compliance with the order. The order was final when entered because it "dispose[d] of the whole subject, [gave] all the relief contemplated, provide[d] . . . reasonable completeness for giving effect to [its terms], and [left] nothing to be done in the cause save to superintend ministerially the execution of the order." Newsome, 18 Va. App. at 26, 441 S.E.2d at 348 (citation omitted); see also Weizenbaum v. Weizenbaum, 12 Va. App. 899, 901, 407 S.E.2d 37, 38 (1991) (holding that an order granting a divorce and denying periodic spousal support but taking under advisement a motion for lump sum alimony was a final, appealable order as to the divorce on the date of entry). Accordingly, we hold that the order is appealable.

-

III.

"Fundamental rules of pleading provide that no court can base its judgment or decree upon a right which has not been pleaded and claimed."  Boyd v. Boyd, 2 Va. App. 16, 18, 340 S.E.2d 578, 580 (1986).  The purpose in requiring "pleadings is to give notice to the opposing party of the nature and character of the claim, without which the most rudimentary due process safeguards would be denied."  Id. at 19, 340 S.E.2d at 580.

> "The basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought.  It is the sine qua non of every judgment or decree.  No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed. . . .  Pleadings are as essential as proof, the one being unavailing without the other.  A decree cannot be entered in the absence of pleadings upon which to found the same, and if so entered it is void. . . .  Every litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense. . . .  The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence."

Gologanoff v. Gologanoff, 6 Va. App. 340, 346, 369 S.E.2d 446, 449 (1988) (citations omitted).

The record undisputedly establishes that the mother's motion for modification of visitation contained no suggestion, explicit or implicit, that she sought to remove the requirement for supervised visitations.  In this regard, the motion

-

specifically requested only that the "Court designate another supervisor to facilitate the Wednesday evening visitation." (Emphasis added).  Moreover, the statement of facts also indicates that the mother "testified . . . that the current supervisor was too expensive, which was causing the inconsistent visitation."  The mother also presented testimony of a witness who "stated that she would be willing to supervise visitation at a less expensive rate than that charged by [the current supervisor]."

Neither the motion nor any other pleading gave the father notice that he would be subject to the relief that the trial judge ordered.  In view of the incident that gave rise to the condition of supervised visitation, the best interest of the children and the due process rights of the father were not safeguarded by ordering relief that significantly departed from the tenor of the pleadings on the relief requested.  Thus, we hold that the trial judge erred in removing the requirement of supervised visitation without prior notice to the father.

In view of this Court's previous order staying the effect of the trial judge's order and the passage of nine months since the entry of the trial judge's order, we reverse that portion of the trial judge's October 6, 1999 order granting the mother unsupervised visitation, and we remand this matter to the

-

circuit court for further proceedings upon proper notice if the parties be so advised.

<u>Reversed and remanded</u>.