## Richmond

### BONNIE BELO ENTERPRISES, INC., ET AL., ETC. v. COMMONWEALTH OF VIRGINIA.

June 11, 1976.

Record No. 750652.

Present, All the Justices.

*E. Ralph James; David K. Sutelan (James A. Howard; Breeden, Howard & McMillan; James, Richardson, James, Sawyer & Quinn, on brief), for plaintiffs in error.*

*Gilbert W. Haith, Assistant Attorney General; Jim L. Chin, Assistant Attorney General (Andrew P. Miller, Attorney General, on brief), for defendant in error.*

HARMAN, J., delivered the opinion of the court.

The defendants, Bonnie BeLo Enterprises, Inc. (Bonnie BeLo), and Commonwealth Foods, Inc., trading as Farm Fresh Supermarkets (Farm Fresh), were convicted and fined by the trial court for violating Code § 18.1-363.1[1] (Acts, 1974, c.330), commonly referred to as the Blue Law or Sunday Closing Law.

---

[1] This statute, as amended, is now recodified as Code § 18.2-341.

Blue Laws or Sunday Closing Laws go far back into American history, having been brought to the Colonies with a background of English legislation dating to the thirteenth century. *McGowan* v. *Maryland*, 366 U.S. 420, 431 (1961). In *Mandell* v. *Haddon*, 202 Va. 979, 121 S. E. 2d 516 (1961), Mr. Justice I'Anson, now Chief Justice, traced the legislative history of these laws in Virginia from 1610, when they were of a religious character, to their evolution into laws of a clearly secular character following the Revolution. *Id*. at 988, 121 S. E. 2d at 523.

The facts here are not in dispute. The defendants are substantial merchants engaged in operating supermarkets selling food and non-food products in Portsmouth and the Tidewater area of Virginia. Defendants' Portsmouth stores were operating on Sunday, November 10, 1974, and were selling their entire line or inventory of goods, including non-food as well as food items. Defendants were charged with a Blue Law violation after a city policeman purchased paper plates and paper cups from Bonnie BeLo and another officer purchased a paper back novel entitled "The Day of the Jackal" from Farm Fresh.

Code § 18.1-363.1 then provided, in pertinent part:

"(a) On the first day of the week, commonly known and designated as Sunday, no person shall engage in work, labor or business or employ others to engage in work, labor or business except in the following industries and businesses:

* * *

" (15) Sale of food;

* * *

" This section shall not be applicable to works of charity conducted solely for charitable purposes by any person or organization not organized or engaged in business for a profit.

"(b) Any person violating the provisions of this section shall be guilty of a misdemeanor.

"(c) Nothing contained herein shall be construed to permit any fine or penalty against any employee or agent who has been caused, directed or authorized by his employer to violate any provision of this section, in which case the employer shall be subject to the sanctions prescribed by this section."

While the defendants challenge the constitutionality of the law on several grounds, we do not reach those questions because of the

construction which we place upon the statute. Here, as in the court below, the defendants point out that the evidence establishes that their principal business is the sale of food, a business which may legally operate on Sunday under the "industry and business exemption" provided by paragraph (a)(15) of the Act. They argue that this exemption allows them to sell all merchandise, including non-food items, normally sold in the ordinary course of their businesses and which are incidental thereto.

The Attorney General takes the position that paragraph (a) (15) exempts the sale of a commodity, i.e., food, rather than exempting a business, i.e., the operation of a food store or supermarket, so that only food, the exempt commodity, could be legally sold by the defendants on Sunday.

Prior to adoption of Code § 18.1-363.1 in 1974, it was unlawful for any person to engage in work, labor or business or to employ others to engage in work, labor or business on Sunday except in household or other works of necessity or charity. Certain businesses and commodities were specifically exempt under this earlier version of the statute which also contained a list of 30 items, the Sunday sale of which would not be deemed a work of necessity or charity. The text of the 1960 version of our Blue Law, Code § 18-329, is set forth in full in footnote 2 in *Mandell* v. *Haddon, supra,* 202 Va. at 982-83, 121 S. E. 2d at 520.

Among the proscribed commodities under the 1960 statute were: ". . . farm produce (excluding sales of farm produce grown by the seller and sold at roadside stands or at the place where grown) or fresh, frozen or salt meats, poultry or seafood customarily inedible without further cooking or preparation (excluding smoked or cured hams). . . ." Acts, 1960, c.c. 267, 358. In 1964 the proscription dealing with farm produce in the statute was amended to read: ". . . fresh fruits and vegetables (excluding sales of fresh fruits and vegetables and other edible products which are both grown by the seller in this State and sold either at roadside stands or at the place where grown), . . ." and the exclusion of smoked or cured hams was deleted. Acts, 1964, c.394.

The next significant amendment occurred in 1973 when fruits and vegetables and fresh, frozen or salt meats, poultry or seafood were all dropped from the proscribed list. Acts, 1973, c.427.

In 1974 the General Assembly completely rewrote the Blue Law. In doing so it dropped all reference to household work and other

works of necessity. It continued to exempt works of charity, but only those which were conducted solely for charitable purposes by a person or organization not organized or engaged in business for a profit. Nowhere in this act does there appear, as in the earlier statutes, a list of *commodities* whose sale is prohibited on Sunday.

While it can be argued that the language in paragraph (a)(15) of the 1974 act might be construed as a commodity exemption, to do so would require us to ignore the stated purpose of the General Assembly to permit the Sunday operation of the enumerated "industries and businesses". The rules of construction are conceived and applied to give effect to legislative intent—not to defeat it. All rules are subservient to that intent. *Mandell v. Haddon, supra,* 202 Va. at 984, 121 S. E. 2d at 521; *Shackelford v. Shackelford,* 181 Va. 869, 877, 27 S. E. 2d 354, 358 (1943).

While Sunday Closing Laws were originally of a religious nature, such acts, since adoption in 1776 of Virginia's Declaration of Rights, 9 Hening's Statutes of Virginia 109, 111-112, and the adoption of the First Amendment to the United States Constitution, have historically found their justification in the police power under the rationale that the purposes of such acts are to provide a day of rest for persons and to prevent physical and moral debasement from uninterrupted labor. *Rich v. Commonwealth,* 198 Va. 445, 448-449, 94 S.E.2d 549, 552 (1956); *Pirkey Bros. v. Commonwealth,* 134 Va. 713, 114 S.E. 764, 29 A.L.R. 1290 (1922).

The General Assembly has seen fit to permit those engaged in the business of selling food, food dealers—whether they be called a grocery store, convenience store or supermarket, to operate their business on Sunday. The operation of such a business on Sunday will necessarily entail the labor of persons employed there.

Under an earlier version of the Blue Law, we held that if the primary activity is permitted as an exception under the act, then whatever labor, work or business which is a necessary adjunct to such primary activity is also permitted. *Williams v. Commonwealth,* 179 Va. 741, 746, 20 S.E.2d 493, 494 (1942). We conclude therefore, that under paragraph (a)(15), a food dealer, one whose principal business is the "sale of food", is permitted, incidental to the operation of his business on Sunday, to sell such non-food items as are sold in the ordinary and normal course of his business.

*Reversed and dismissed.*